UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| **HENRY LEONARD** | * | **CIVIL ACTION** |
| | * | |
| | * | **NUMBER 07-0813** |
| **VERSUS** | * | |
| | * | **JUDGE WALTER** |
| | * | |
| **STATE OF LOUISIANA, ET AL** | * | **MAGISTRATE HORNSBY** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEFENDANTS' STATEMENT OF UNCONTESTED MATERIAL FACTS**

**NOW INTO COURT**, through undersigned counsel, come the State of Louisiana, through the Department of Public Safety & Corrections; Secretary James M. Le Blanc in his official capacity, Warden Venetia Michael, and Lt. Col. Jackie Hamil, who submit the following statements of uncontested, to wit:

1. Henry Leonard ("Leonard") is an inmate committed to custody of the Department and housed at David Wade Correctional Center ("DWCC").

2. Leonard is serving a life sentence for the conviction of 2nd degree murder.

3. Due to Leonard's prior law enforcement work history, thirteen and one-half (13-½) years with Baton Rouge City Police Department and two (2) years with East Baton Rouge Parish Sheriff's Department, Leonard is housed in the N-5 protective work at DWCC.

4. Prior to his incarceration, Leonard joined Nation of Islam ("NOI").

5. As part of his membership process with the NOI, he completed the Student Enrollment Lesson.

6. When he first arrived at DWCC, he was permitted to receive the publication the *Final Call*, which is disseminated by the Nation of Islam.

7. The prior NOI publication was entitled "*Mohammad Speaks*".

8. The type of Islamic faith practiced at David Wade Correctional Center is Al-Islam.

9. All Muslims are allowed and encouraged to participate in the Al-Islam services and programs.

10. DWCC, through Al-Islam faith based program, provides a daily study group, weekly Friday services, participation in Ramadan fasting culminating in the Feast of Id, written instructional materials in the Chapel, spiritual advisor, and permission to keep the necessary personal implements of the Muslim faith in the housing units such as the Qur'an and prayer rugs.

11. The Department encourages faith based groups and the participation in same. The benefits received from the faith based groups promote rehabilitation and successful re-entry into society.

12. No groups, whether, employee or visitor oriented, are permitted that discriminate on the basis of race.

13. The Department does not permit any type of gang affiliated groups, whether formal or informal; these types of special identity, or race based groups, are deemed by the Department to be a security risk.

14. The rules concerning inmate mail and publications are contained in Department Regulation C-02-009.

15. In January of 2007, a revised C-02-009 Department Regulation was promulgated.

16. In 2005, the position of Regional Warden was added to the Department's list of job designations.

17. The Regional Warden hierarchy divided the Department's institutions into three geographical regions. It was an attempt to promote unity and consistency of policy throughout the Department.

18. At the time of the incident at issue herein, the three Regional Wardens were Warden Venetia Michael, Region 1; Warden Burl Cain, Region 2; and Warden James Le Blanc, Region 3.

19. The current Regional Wardens are Warden Lynn Cooper, Region 1; Warden Burl Cain, Region 2; and Warden Steve Rader, Region 3.

20. One of the duties of the Regional Wardens is to assure consistency throughout the Department regarding publications that would be permitted into the institutions and which publications would be rejected.

21. A listing of three categories of publications was devised, those presumptively rejected (Category 1), those to be reviewed each month (Category 2), and those presumptively admissible (Category 3).

22. After an initial screening of publications was performed by each Regional Warden, and upon unanimous agreement, the publication was placed in the appropriate category pursuant to Department Regulation C-02-009.

23. Following the initial screening process, the Regional Warden would review only those issues of publications that the mailroom staff had deemed to be objectionable and in violation of the Department Regulation, or new subscriptions previously unreviewed.

24. No mailroom personnel had or has authority to reject a publication heard on his or her own determination.

25. The three (3) Regional Wardens confer, in person, by email or by telephone to decide if a publication should be rejected and written reasons for the rejection are given.

26. An email containing the information of the rejected publication would then be sent to each institution by the appropriate Regional Warden.

27. The institution mailrooms, based upon the instruction from the Regional Warden, would either disseminate the questioned publication or send the subscribing inmate a Notice of Rejection.

28. The *Final Call* magazine was reviewed during the screening process and found to be in violation of Department Regulation No. C-02-009.

29. "The Muslim Program", which is contained in exact replica in each issue of the *Final Call,* was deemed to be a threat to security as the material contained racially inflammatory material and material that could cause a threat of potential violence to the inmate population, staff and security of the facility.

30. In approximately June of 2005, the Department initially rejected the *Final Call*. Every inmate Department-wide, including Leonard, who had subscribed to the *Final Call* received Notices of Rejection.

31. Each *Final Call* issue has subsequently been rejected because of the inclusion of the page entitled "The Muslim Program".

32. Warden Cain wrote Brother Abdullah Mohammad at NOI Headquarter requesting a "Corrections version" of the *Final Call* which did not contain "The Muslim Program". No response was ever received.

33. If a publication is rejected for one article, the entire issue is rejected. There is no redaction or tearing out of pages.

34. The DWCC mailroom is staffed by two (2) full time employees, one (1) part time employee, and a mail room supervisor.

35. All incoming and outgoing mail must be examined and reviewed.

36. If the *Final Call* did not contain "The Muslim Program" each edition of the *Final Call* would be reviewed for content in accordance with Department Regulation C-02-009.

37. If any other racially inflammatory articles were found to be included in a particular issue of the *Final Call*, the entire issue would be rejected.

38. No racially inflammatory material is permitted into any Department institution, including DWCC.

39. No racially segregated worship or religious services are permitted in any Department institution, including DWCC.

40. Leonard has received publications from the *Final Call* publisher which have not been found to be violative of Department Regulation.

41. A primary mission of the Department is to protect the security of the inmates, employees, visitors and the public at large.

42. Special accommodations for participation in the religious services are made for those inmates housed in the protective unit at DWCC.

Respectfully submitted,

s/Susan Wall Griffin
SUSAN WALL GRIFFIN
Bar Roll No. 22402
Department of Public Safety & Corrections
P.O. Box 94304, Capitol Station
Baton Rouge, La. 70804-9304
(225) 342-6743

Dated: 4/20/09

**Attorney for Movants/Defendants,
STATE OF LOUISIANA, JAMES LE BLANC, VENETIA MICHAEL AND JACKIE HAMIL**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing Motion for Summary Judgment, Memorandum in Support of Defendant's Motion for Summary Judgment, Defendant's Statement of Uncontested Materials Facts, and Exhibits was filed with the United States District Court using the CM/ECF filing system.

Baton Rouge, Louisiana this 20th day of April, 2009.

_____
Susan Wall Griffin