U.S DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

SEP 20 2010

TONY R. M------ CLERK
BY ------ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| HENRY LEONARD | CIVIL ACTION NO: 07-0813 |
| VERSUS | JUDGE DONALD E. WALTER |
| STATE OF LOUISIANA, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Henry Leonard ("Plaintiff") is a prisoner housed at David Wade Correctional Center ("DWCC"). Plaintiff filed this cause of action against the State of Louisiana through the Louisiana Department of Safety and Corrections ("Department"); former Secretary of the Department, Richard Stalder ("Stalder"), in his official capacity, for whom James M. LeBlanc ("LeBlanc") has been substituted; Warden Venetia Michael ("Warden Michael"), in both her official and individual capacity; and Lt. Col. Jackie Hamil ("Lt. Col. Hamil") in both his official and individual capacity.

Plaintiff, a member of the Nation of Islam ("NOI"), alleged that DWCC denied him access to *The Final Call*, a religious and political newsletter published by NOI, in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). [Doc. #1]. The parties filed cross-motions for summary judgment on all claims. [Docs. #45 and #47]. This Court denied the Defendants' motion, and granted Plaintiff's motion in part. [Doc. #65]. The Court found that DWCC's decision to withhold issues of *The Final Call* solely because of the inclusion of "The Muslim Program" was a violation of the First Amendment and RLUIPA. This Court granted prospective injunctive relief to Plaintiff, ordering that DWCC deliver future issues of *The Final Call* subject to the Department of Corrections Regulation No: C-02-009. The Court reserved ruling on Plaintiff's claims for nominal and punitive damages, and ordered the parties to provide supplemental

briefing on any outstanding issues, including whether attorney's fees are appropriate in this case. [Docs. #65, #68, and #70].[1]

After receipt of the supplemental briefs, the remaining issues for consideration of the Court are as follows: (1) whether Plaintiff is entitled to nominal and/or punitive damages, and (2) whether Plaintiff is entitled to attorney's fees. [Docs. # 68 and 70].

## **Damages**

A.   Nominal Damages

This Court has previously determined that Plaintiff suffered a violation of his First Amendment rights, as well as his rights under RLUIPA.[2] Nominal damages are the proper award for a constitutional violation unaccompanied by a compensable injury or damage. *Williams v. Kaufman County*, 352 F.3d 994, 1014-1015 (5th Cir. 2003).[3] Accordingly, this Court finds that a nominal damage award is appropriate in this case against Warden Michael and Lt. Hamil, the two remaining Defendants sued in their individual capacity pursuant to 42 U.S.C. § 1983.

Plaintiff argues that the Court should consider an amount that would be "trifling" by today's standards. [Doc. #68 at 2]. Plaintiff urges the Court to consider awarding nominal damages in an amount as high as $2000, noting that such an award has been upheld in the context of a commercial litigation case. *Id.* Defendants counter that in the setting of a correctional institution, any award

---

[1] The Court did not rule on damages and attorney's fees because Plaintiff did not brief these issues, but merely requested nominal and punitive damages in his conclusion. [Doc. #47].

[2] RUILPA does not provide a cause of action for individual-capacity claims. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 329 (5th Cir. 2009).

[3] This Court previously dismissed Plaintiff's claim for compensatory damages due to the Prison Litigation Reform Act. [Docs. #21 and 23].

greater than the customary amount of $1.00 would be a substantial award. [Doc. #70 at 3]. This Court agrees. Nominal damages are not awarded to compensate the Plaintiff, but merely to serve as a symbol that a constitutional violation has occurred. *See Carey v. Piphus*, 435 U.S. 247, 266-267 (1978).

Plaintiff is hereby awarded nominal damages in the amount of $1.00 against Warden Michael and Lt. Col. Hamil, in their individual capacities, for his 42 U.S.C. § 1983 claim for a violation of his rights under the First Amendment.

B.  Punitive Damages

Plaintiff originally made punitive damages claims against both Warden Michael and Lt. Col. Hamil in their individual capacities. Plaintiff has informed the Court that he has decided not pursue punitive damages against Lt. Col. Hamil, who was the mailroom supervisor at DWCC at the time the decision was made to ban *The Final Call*. [Doc. #68 at 3]. Plaintiff notes that Lt. Col. Hamil did not initially flag *The Final Call* for censorship, rather, it was Warden Michael who instructed him to reject the publication. *Id.*

A plaintiff who is successful in asserting a 42 U.S.C. § 1983 claim for a constitutional violation may be entitled to punitive damages even in the absence of actual damages. *Williams*, 352 F.3d at 1015. "But punitive damages may be awarded only when the defendant's conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights. The latter standard requires recklessness in its subjective form, i.e. a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Id.* (internal quotations and citations omitted).

Plaintiff claims that punitive damages are appropriate in this instance against Warden

3

Michael because she "created the unconstitutional policy, ordered employees to enforce it, and encouraged other prison officials to adopt it at their prison." [Doc. #68 at 4]. Further, Plaintiff claims that Warden Michael should have been aware of the precedent in the Fifth Circuit regarding *The Final Call* because she testified that she read "stacks and stacks and stacks of every piece of information that [she] could get [her] hands on from every state and their policy, every lawsuit that had to do with mail." *Id.* The Court notes that this statement was made by Warden Michael during her deposition when she was being questioned regarding the promulgation of the Department of Corrections regulation at issue in this case. [Deposition of Michael at 89-93]. There is no indication in the record that Warden Michael was actually aware of the Fifth Circuit case *Walker v. Blackwell*, 411 F.2d 23 (5th Cir. 1969).

Warden Michael testified at her deposition that she denied Plaintiff access to *The Final Call* because she felt that the publication was in violation of Department of Corrections Regulation No: C-02-009. [Deposition of Michael at 46-48]. Specifically, she testified that in her opinion the content of *The Final Call* was potentially racially inflammatory in a prison setting with 1200 inmates living in close proximity to each other. *Id.* Warden Michael states in an email dated June 1, 2006, that it was her belief that certain portions of *The Final Call* could "promote the breakdown of order through inmate disruption, such as strikes or riots or instigation of inmate unrest for racial or other reasons." [Doc. #45-35]. This reasoning does not indicate that her actions were motivated by evil intent, nor does it demonstrate a consciousness of a risk of injury to the Plaintiff and a criminal indifference to her civil obligations.

As this Court has previously noted in this case, the penological objective underlying the regulation at issue is both legitimate and neutral, and is rationally related to a legitimate

governmental interest. DWCC has a legitimate interest in trying to decrease racial tensions among prisoners, which can lead to numerous problems up to and including violence. [Doc. #64 at 15]. The regulation on its face does not violate the constitution. It was the manner in which DWCC implemented the regulation which caused the violation. The wholesale prohibition of *The Final Call* because of the inclusion of "The Muslim Program" was too broad when balanced with Plaintiff's right to the free exercise of his religion. *Id.*

Accordingly, the Court finds that an award of punitive damages against Warden Michael in her individual capacity is inappropriate.

### **Attorney's Fees**

Plaintiff argues that he is entitled to attorney's fees as a matter of course because he is the prevailing party. [Doc. #68 at 6]. There is no question in this instance that Plaintiff is the prevailing party. Plaintiff obtained actual relief in the form of an enforceable judgment for prospective injunctive relief that requires that DWCC officials deliver *The Final Call*, subject to the Department of Corrections Regulation No: C-02-009. *See Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002). Defendants concede that counsel for Plaintiff, Katie M. Schwartzmann and Nelson W. Cameron, are entitled to receive attorney's fees in this case. However, Defendants adamantly object to the amount of the award suggested by Plaintiff. [Doc. #68 at 9-14].

The Court must follow the Prison Litigation Reform Act ("PLRA") when considering the issue of attorney's fees because Plaintiff was incarcerated at the time he filed his lawsuit, and at all relevant times thereafter. *See* 42 U.S.C. § 1997e(d)(1). The PLRA also sets forth the parameters the Court must follow when awarding fees:

> (d) Attorney's fees
>
>> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that--
>>
>>> (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>>>
>>> (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>>>
>>> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
>>
>> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
>>
>> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.
>>
>> (4) Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title.

42 U.S.C. § 1997e(d).[4]

The first step in determining an appropriate fee award is to determine the "lodestar" amount by multiplying the number of hours worked on the litigation by a reasonable hourly rate. *Rutherford*

---

[4] Because Plaintiff is awarded prospective injunctive relief in addition to nominal damages, the PLRA cap limiting attorney's fees to 150 % of the monetary judgment does not apply. *See Boivin v. Black*, 225 F.3d 36, 41 n.4 (1st Cir. 2000); *Walker v. Bain*, 257 F.3d 660, 667 n.2 (6th Cir. 2001); *Foulk v. Charrier*, 262 F.3d 687, 703 n. 17 (8th Cir. 2001); *Dannenberg v. Valadez*, 338 F.3d 1070, 1075 (9th Cir. 2003).

*v. Harris County, Texas*, 197 F.3d 173, 192 (5th Cir. 1999). Reasonable fees are to be calculated according to the prevailing market rates in the relevant community, regardless of whether the prevailing party is represented by private counsel or a non-profit legal aid society. *See Blum v. Stenson*, 465 U.S. 886 (1984). The appropriate hourly rate is not that which "the lions at the bar may command" but a rate that is adequate to attract competent counsel. *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990).

Nelson W. Cameron testifies in his affidavit that he charges a rate of $175.00 per hour for all legal services. [Doc. #68, Ex. C]. He also testifies that he has been awarded fees by this Court at a rate of $150.00 per hour on numerous occasions. *Id.* He has practiced law for more than twenty-five years, with more than twenty years focused on civil rights litigation. *Id.* He notes that Plaintiff is an incarcerated inmate who lacked the ability to pay any fees throughout the course of litigation. *Id.*

Katie M. Schwartzmann testifies in her affidavit that she has practiced public interest law since 2003, and has worked for the American Civil Liberties Union ("ACLU") since August 2005. [Doc. #68, Ex. E.]. She states that one hundred percent of her practice consists of civil rights litigation, with every case taken under a contingency arrangement. *Id.* Ms. Schwartzmann testifies that there is no ascertainable "market rate" for plaintiffs' attorneys in civil rights cases. *Id.* Although Ms. Schwartzmann has been a licensed attorney for less than ten years, she has garnered a great deal of experience from her association with the ACLU, and currently serves as their legal director for the state of Louisiana. *Id.*

There is a wide range in the hourly rate charged by local members of the bar for litigating civil rights cases. Based on the nature of the case, the complexity of the issues involved, and the

experience of the attorneys, the Court finds that a rate of $175.00 per hour is appropriate. This rate is near the maximum allowed under the PLRA, which caps fees at 150% of the hourly rate of court appointed counsel.[5]

Using the Court determined rate of $175.00, the amount of attorneys fees claimed for hours billed is as follows:

    Mr. Cameron:        77.57 hours ($175.00) + 2.0 ($35.00 admin. rate) = $13,644.75

    Ms. Schwartzmann    523.70 hours ($175.00) = $91,647.50

Defendants challenge four separate entries by Ms. Schwartzmann. First, Defendants note that she billed 23.7 hours in a single day, April 20, 2009. The Court notes that this date was the deadline to file dispositve motions, however 23.7 hours is excessive considering the midnight filing deadline.[6] This entry is reduced to 16 hours. Second, Defendants challenge an entry of 9.9 hours for travel from Baton Rouge to New Orleans due to bad weather and traffic delays. This entry is reduced to 2 hours. Third, Defendants argue that Ms. Schwartzmann should only be awarded an administrative rate for 11.2 hours billed on January 22-23, 2009, for copying discovery materials. This entry will be reduced to a rate of $35.00 per hour. Fourth, Defendants argue that Ms. Schwartzmann should only be awarded an administrative rate for 3.1 hours billed on June 4, 2009 for sending a copy of Plaintiff's motion for summary judgment to Mr. Cameron. This entry will likewise be reduced to a rate of $35.00 per hour.

---

    [5] The current rate for court appointed attorneys in the Western District of Louisiana is $125.00 per hour, which statutorily caps the maximum rate under PLRA at $187.50 per hour. [Doc. #70, Ex. B].

    [6] The docket reflects that Plaintiff's motion was filed at 11:37 p.m., April 20, 2009.

Applying the adjustments above, the amount of attorneys fees claimed stands as follows:

Mr. Cameron    77.57 hours ($175.00) + 2.0 ($35.00 admin. rate) = $13,644.75

Ms. Schwartzmann    493.80 hours ($175.00) + 14.30 hours ($35.00) = $86,915.50

Having found the lodestar amount, the Court must continue its analysis to determine whether the fees award should be adjusted further. The PLRA mandates that a fee award must be proportionately related to the Court ordered relief of an actual violation. *See* 42 U.S.C. § 1997e(1).

The Plaintiff prevailed in obtaining his primary objective in filing his lawsuit, to require DWCC to deliver and provide access to *The Final Call*. However, Plaintiff was not successful on all of his claims, nor was he successful in obtaining compensatory or punitive damages. [*See* Docs. #21 and 23]. The PLRA requires the Court to only award fees which are directly incurred in obtaining the court ordered relief. Accordingly, the fees as currently tabulated are reduced by 15%.

The Court hereby awards attorney's fees to Plaintiff's counsel in the following amount:

Mr. Cameron    $13,644.75 - 15% = $11,598.04

Ms. Schwartzmann    $86,915.50 - 15% = $73,878.18

## Conclusion

For the reasons assigned herein, Plaintiff's Motion for Summary Judgment [Doc. #47] is **GRANTED IN PART** and **DENIED IN PART**.

Plaintiff's claims for nominal damages against Lt. Col. Hamil and Warden Michael, in their individual capacities, for violating his First Amendment rights pursuant to 42 U.S.C. § 1983 are **GRANTED**. Lt. Col. Jackie Hamil is **ORDERED** to pay Plaintiff the amount of one dollar and zero cents ($1.00). Warden Venetia Michael is **ORDERED** to pay Plaintiff the amount of one dollar and zero cents ($1.00).

Plaintiff's claim for punitive damages against Warden Michael in her individual capacity pursuant to 42 U.S.C. § 1983 is **DENIED**.

Having previously found that DWCC violated Plaintiff's rights under the First Amendment and RLUIPA by improperly denying him access to *The Final Call*, the Court hereby awards attorney's fees pursuant to the provisions of 42 U.S.C. § 1997e(d). The Louisiana Department of Corrections and Secretary James M. LeBlanc are hereby **ORDERED** to pay attorney's fees to Nelson W. Cameron in the amount of eleven thousand five hundred ninety eight dollars and four cents ($11,598.04). The Louisiana Department of Corrections and Secretary James M. LeBlanc are hereby **ORDERED** to pay attorney's fees to Katie M. Schwartzmann in the amount of seventy three thousand eight hundred seventy eight dollars and eighteen cents ($73,878.18).

**THUS DONE AND SIGNED**, this 20 day of September, 2010.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE